Michele L. GOOD, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 53527.

Missouri Court of Appeals,
Western District.

April 14, 1998.

As Modified June 30, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 30, 1998.

Application for Transfer Sustained
Aug. 25, 1998.

Case Retransferred Nov. 24, 1998.

Court of Appeals Opinion Readopted
Dec. 3, 1998.

---

William E. Shull, Liberty, for Appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for Respondent.

Before ELLIS, P.J., and HOWARD and RIEDERER, JJ.

HOWARD, Judge.

Michele L. Good appeals from the denial of her Rule 24.035 motion for post-conviction relief. Good contends that the trial court should have allowed her to withdraw her plea of guilty after declining to follow the State's recommendation of a 120–day callback, and that her trial counsel was ineffective for failing to adequately advise her that the court might not follow the State's recommendation of a 120–day callback. Good also contends that the court failed to personally advise her that she could not withdraw her plea if the court failed to follow the State's recommendation of the 120–day callback.

Reversed and remanded.

Good was charged with first-degree assault for immersing a one-year-old girl she was babysitting into a sink full of boiling water, causing third-degree burns over a large portion of the girl's body. Good and the State entered into a plea agreement, the substance of which was set out in a July 11, 1995 letter which the prosecutor wrote to David Miller,

Good's counsel, and which Good acknowledged that she also read:

At the sentencing, I will be recommending that your client receive a 20 year sentence and be committed to the Missouri Department of Corrections under the 120 day rule. As you are aware, I have no authority to bind Judge Bryant on his use of the 120 day rule. Pursuant to your authorization, I did run the general terms and conditions of our plea arrangement by Judge Bryant and he indicated that he would go along with them. Obviously, he could not commit on the 120 day rule until such time as he receives the report back from the Department of Corrections for his review.

On July 21, 1995, Good appeared before the trial court and entered a plea of guilty to the charge of first-degree assault. Prior to entering the plea, Good was given a questionnaire entitled "To Defendants Who Plan to Enter a Plea of Guilty," which asked the recipient understood various aspects and consequences of the guilty plea process. Item No. 24 on the questionnaire read as follows:

24. Do you understand that the "plea bargaining" in this case is only a recommendation to the Court; and, that you do not have a right to withdraw your guilty plea and have a trial by jury?

It was Miller, not Good, who filled in a response of "yes" to this question, but all the questions and answers were given to Good to read and consider.

At the guilty plea hearing, Miller questioned Good to ensure that she understood the agreement concerning the 120–day callback provision:

Q. You understand, do you not, and I've explained to you, that the recall—in other words, bringing you back, is something that [the prosecutor] and I, by our agreement to recommend to Judge Bryant, that that's strictly his decision?

A. Yes.

Q. I've explained to you as an aid to making that decision that we've recommended—or will recommend to the Court at the appropriate time that in the event the Court accepts our plea, that the Judge ask Probation and Parole to do a presen-

tence investigation and report. Do you understand that?

A. Yes.

Q. And I've explained to you that, basically, that's a background check and a look, not only at your background, but at your current situation, as I say, as an aid to the Court in determining whether the plea agreement should, in fact, be honored and that it's appropriate under the circumstances?

A. Yes.

Q. And I've explained to you, also, that in the event the Court would impose this sentence and you would be committed, that recall under 559.115, as the statute says, is on the court's own motion, do you understand that?

A. Yes.

Q. In other words, I—if necessary, I doubt very much that it would be, knowing the Court, but if it were necessary, I can certainly plant the seed with the Court. I can say, "Judge, remember, we need to bring Ms. Good back." But basically, the making of that motion on the record and the accomplishment of returning you to court for consideration of probation is a matter strictly within the Court's own purview, you understand that?

A. Yes.

Q. And you understand, finally, do you not, that the granting of a probation, as we're discussing it, following the serving of however much—up to a maximum of 120 days that you might actually serve, again, is strictly in the judge's discretion, you understand that?

A. Yes.

Q. Again, that—I'm sure, that you contemplated, as do I, and, I suspect, as presumably does Mr. Thompson, in making the recommendation to the Court, but that the final decision is a function of the presentence investigation, the report that the Court would receive from the Department of Corrections, and frankly, just the Judge's own view of the case, but that it will be his decision and his decision alone ultimately to make, you understand that?

A. Yes.

At the close of the guilty plea hearing, the court accepted Good's plea of guilty to first-degree assault as being voluntarily and knowingly made, but deferred her sentencing until a later hearing.

Good's sentencing hearing took place on November 29, 1995. There was testimony from the victim's mother and a plastic surgeon concerning the extent and consequences of the victim's injuries. The court also noted that it had reviewed the pre-sentence investigation report, which recommended against probation or a 120–day callback. At the close of the hearing, the court sentenced Good to a twenty-year term of imprisonment, and declined to follow the State's recommendation of a 120–day callback. Miller then asked that Good be allowed to withdraw her guilty plea, and the court denied that request.

Good then filed a Rule 24.035 motion for post-conviction relief. At the evidentiary hearing, Good testified that she thought that the twenty-year sentence and the 120–day callback were a "package deal"—that the court couldn't accept the sentence and turn down the callback. Good then testified as follows about the callback:

Q. Now, prior to pleading guilty, when you and Mr. Miller were discussing this, did you—were you ever told by Mr. Miller, or anyone—now, I'm talking about before you came to court—that the Court could refuse the recommendation?

A. The 120 callback?

Q. Yes.

A. No.

Q. All right. Did your attorney, Mr. Miller, ever tell you that if the Court refused the 120–day callback, that you would still receive the 20–year sentence? And again, I'm talking about before you walked into the courtroom or before the Court accepted your plea of guilty.

A. No.

Q. Now, were you aware that the Court could deny the 120–day callback after it received a report from the Department of Corrections as to your adjustment and conduct down there?

A. Yes.

Q. All right. You understood that?

A. Uh-huh.

Q. All right. Were you aware that the Court could and would refuse 120–day callback at the time of sentencing even before such a report was received from the Department of Corrections?

A. No.

Q. If you had known that you would not receive the 120–day callback, would you have entered a plea of guilty?

A. No.

Good also testified that it was her understanding, from statements by Miller, that based upon his experience, the court would follow the recommendation and she would almost certainly get probation. On cross-examination, Good stated that she "somewhat understood" that neither her counsel nor the prosecutor had the authority to bind the court on the use of the 120–day provision, and that it was merely a recommendation.

Miller also testified at the evidentiary hearing. Miller stated that, prior to the guilty plea hearing, he told Good that it was the court's prerogative to turn down the 120–day callback at sentencing, but he also explained to Good that he felt that it was highly unlikely that that would happen. Miller also stated that he did not recall ever telling Good that, if the court rejected the 120–day callback at sentencing, she would still have to do the twenty-year sentence. On cross-examination, Miller elaborated on the issue of what he told Good about withdrawing her plea of guilty:

Q. You did indicate, did you not, Mr. Miller, that you had discussed with her the possibility that the Court could refuse to honor the guilty plea; is that right?

A. That's right.

Q. And also, that in the event that the guilty plea was not honored, she could not withdraw the guilty plea; is that correct?

A. I discussed with her that certainly that, as I read it, was the state of the law.

Q. And so, she was aware of that at the time that she entered her plea?

A. I feel I would have to caveat it by saying my experience, at least within the circuit—not with Judge Bryant, in particu-

lar, because of the fact that, frankly, there wasn't a great deal of track record. The Judge was fairly new to the bench—but my general experience with the Court in this circuit, for a number of years, had almost uniformly—not almost uniformly, but had uniformly been that if a plea was entered and the court felt that, for whatever reason, the plea could not be—the plea agreement could not be honored, that leave would have been granted to withdraw the plea. That, I did explain to her.

I likewise explained to her that, technically speaking, the form certainly indicated—and the record, I believe, reflected—that that was not—the Court was not bound to do that.

Q. So she was aware of the latter part as well?

A. I think she was aware of the risk.

After the evidentiary hearing, the motion court denied Good's claims for post-conviction relief.

■ We will first consider Good's third point on appeal, as that is dispositive of the case at bar. Good claims that the trial court failed to personally advise her that she could not withdraw her plea if the court failed to follow the State's recommendation of the 120–day callback.

Prior to the guilty plea hearing, Miller advised Good that courts within the circuit "uniformly" allowed a defendant to withdraw his or her guilty plea if, for any reason, the court did not follow the terms of the plea agreement. In essence, Miller told her that, technically speaking, the questionnaire accurately reflected the law, but that the practice was to allow withdrawal of the plea.

Similarly, Miller had also told Good that it was highly unlikely that the court would refuse to follow the recommendation of the 120–day callback. However, the possibility that Good might fail to understand the risk of a non-binding callback recommendation was diminished when, at the guilty plea hearing, Good was advised repeatedly on the record that the agreement left the court free to reject the callback option.

There was not the same clarification with respect to the issue of the withdrawal of Good's guilty plea. Good was not informed on the record at the guilty plea hearing that she would not be allowed to withdraw her plea if the court refused to follow the State's recommendation on the 120–day callback. In *Prusinowski v. State,* 908 S.W.2d 172, 173 (Mo.App. E.D.1995), the defendant similarly contended that his guilty plea was involuntary because it had been "strongly suggested" that, if the court rejected probation, he would be allowed to withdraw his plea of guilty. The Eastern District rejected this claim because, at the guilty plea hearing, the court personally advised the defendant that a rejection of probation was not a reason to withdraw the plea. No such advisement occurred on the record in the guilty plea proceeding in the case at bar.

■ For a plea to be knowing and voluntary, the defendant must understand certain consequences. With respect to a non-binding plea agreement, the defendant must understand that the judge is not bound to follow the State's sentencing recommendation. The defendant must also know whether his or her guilty plea may be withdrawn if the judge declines to follow the recommendation.

In this case, Good's attorney filled in a response of "yes" to Item No. 24 on the guilty plea questionnaire, which asked whether Good understood that she would not have a right to withdraw her guilty plea and have a trial by jury if the court rejected the recommendation of a 120–day callback. It is true that Good testified that she had read and considered all the questions and answer on the form. However, it is also true that Miller told her that, while the questionnaire was, technically speaking, an accurate statement of the law, the practice was to allow withdrawal of the plea. Under the unique circumstances of this case, we cannot say that Good's plea was knowingly and intelligently made.

Good also claims that the trial court's refusal to follow the State's recommendation of the 120–day callback constitutes a rejection of the plea agreement, and therefore, pursuant to Rule 24.02(d)(4), the trial court should have allowed Good to withdraw her plea of guilty. Good contends that the trial court's refusal to allow her to withdraw her plea merits post-conviction relief.

■ Because we are reversing the motion court on the basis of Good's third point on appeal, we need not resolve the issue of whether the record clearly shows that Good understood the plea agreement to leave the issue of the 120–day callback to the trial court's discretion. This court need only consider those issues which are essential and necessary to an orderly disposition of the appeal on its merits. *Garden View v. Labor & Indus. Rel. Com'n,* 848 S.W.2d 603, 605 (Mo.App. E.D.1993).

Good further claims that her plea counsel was ineffective for failing to advise her that the trial court might not follow the State's recommendation of a 120–day callback. However, as we are reversing the motion court on the basis of Good's third point on appeal, we need not rule on the merits of this contention.

The judgment of the motion court is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

All concur.